1  WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

   Melvin Boor,                    )
9                                  )
              Plaintiff,           )
10                                 )
              v.                   )        CV 05-4113 PHX VAM
11                                 )
   Jo Anne B.Barnhart,Commissioner,)        ORDER
12 Social Security Administration, )
                                   )
13 _____Defendant._____ )

14      Pending before the Court are plaintiff's Motion for Summary

15 Judgment (Docs. 11, 12 and 13) and defendant's Cross-Motion for

16 Summary Judgment.  (Docs. 14, 15 and 21).

17                          **BACKGROUND**

18      Melvin Boor, ("plaintiff") filed for benefits under Title

19 XVI (supplemental security income benefits) of the Social Security

20 Act on October 21, 2002, alleging a disability onset date of

21 September 1, 2000.  (Administrative Transcript ("TR") at p. 17).

22 At the administrative hearing, plaintiff moved to amend the

23 alleged onset date to July 1, 2002.  (Id.)

24      Plaintiff's claim was denied initially and a hearing was

25 held before an Administrative Law Judge ("ALJ") on February 2,

26 2004.  (TR at p. 17).  Plaintiff testified at the hearing as did

27 David A. Janus, M.A., a vocational expert under contract with the

28 Social Security Administration ("Agency").  (Id.)

Following the hearing, the ALJ issued a decision denying plaintiff's application for benefits.  (TR at pp. 17-23).  This decision was upheld on appeal by the Agency Appeals Council on October 18, 2005.  (TR at pp. 4-6).  Plaintiff then brought this action in the District Court seeking to overturn the Agency decision.  (Doc. 1).

**DISCUSSION**

**I. Summary Judgment Standard**

Summary judgment is appropriate when the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.; <u>California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1006 (1988).  There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The moving party bears the burden of demonstrating that there is no material fact precluding summary judgment.  <u>Adickes v. S.H. Kress and Company</u>, 398 U.S. 144, 157 (1970).

Substantive law determines which facts are material. <u>Anderson</u>, 477 U.S. at 248; <u>Jessinger v. Nevada Federal Credit Union</u>, 24 F.3d 1127, 1130 (9th Cir. 1994).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson</u>, 477 U.S. at 248.

A principal purpose of summary judgment is "to isolate and

2

1    dispose of factually unsupported claims." Celotex Corporation v.

2    Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment is

3    appropriate against a party who "fails to make a showing

4    sufficient to establish the existence of an element essential to

5    that party's case and on which that party will bear the burden of

6    proof at trial." Id. at 322; see also Citadel Holding Corporation

7    v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).

8        Furthermore, the party opposing summary judgment "may not

9    rest upon the mere allegations or denials of [the party's]

10   pleadings, but ... must set forth specific facts showing that

11   there is a genuine issue for trial."  Rule 56(e), Fed.R.Civ.P.;

12   Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith

13   Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Lind Rose Joint

14   Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  There is no issue

15   for trial unless there is sufficient evidence favoring the non-

16   moving party.  If the evidence is merely colorable or if not

17   significantly probative, summary judgment may be granted.

18   Anderson, 477 U.S. at 249-50.  However, "the evidence of the non-

19   movant is to be believed and all justifiable inferences are to be

20   drawn in his favor." Id. at 255.

21       **II. General Statutory Authority**

22       42 U.S.C. §423(d)(1) defines disability as the "inability to

23   engage in any substantial gainful activity by reason of any

24   medically determinable physical or mental impairment which can be

25   expected to result in death or which has lasted or can be expected

26   to last for a continuous period of not less than twelve months

27   ..."  In addition, subsection (d)(2)(A) provides:

28                                    3

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work

Subsection (d)(3) of section 423 states:

> ... a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

## II. Standard of Review

The Court must affirm the Commissioner's findings if the findings are supported by substantial evidence in the record and are free of legal error.  See Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions.  See Reddick, 157 F.3d at 720; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  The ALJ is responsible for resolving conflicts, determining credibility, and resolving ambiguities.  See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Margallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

4

If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. See Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990). Therefore, if on the whole record before the Court substantial evidence supports the Commissioner's decisions, the Court must affirm it.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. §405(g).

Under the Social Security Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason  of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  An individual is determined to be under a disability if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A).  The claimant bears the initial burden of proving that he is disabled.  See 42 U.S.C. §423(d)(5); Reddick, 157 F.3d at 721.  If the claimant shows that he was unable to perform past relevant work, the burden shifts to the Commissioner to show that the claimant "can perform other substantial gainful work that exists in the national economy." Reddick, 157 F.3d at 721.

An ALJ determines an applicant's eligibility for disability benefits by following the five stages listed below:

5

(1) determine whether the applicant is engaged in "substantial gainful activity;"

(2) determine whether the applicant has a "medically severe impairment or combination of impairments;"

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

See Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)(citing 20 C.F.R. §404.1520(b)-(f)).  At the fifth stage, the burden of proof shifts to the Commissioner.  See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

**III. Hearing Testimony**

An administrative hearing before the ALJ was held on February 2, 2004.  At the hearing plaintiff testified he had suffered severe back pain since July, 2002.  He stated the pain was mostly in his lower back but also in his upper.  He stated his back "aches" when he wakes up in the morning and later the pain begins to "burn" when he starts moving around or if he tries to lift more than 20 pounds at once.  (TR at pp. 461-72).

Plaintiff testified he could work about 1-2 hours at one time but then needed to lay down for an hour.  He stated he could repeat this cycle again but over an 8 hour day would need to lay down for about 3 hours of that time.  (TR at pp. 461-72).

6

Petitioner contended he takes about 7-8 tylenol4 capsules each day as well as various prescription medicines prescribed by a Dr. Laurel at the Veterans Administration ("VA").  She has been treating him since 1995.  Plaintiff also stated that he has had several "epidural steroidal blocks" since the summer of 2003 (the hearing was held in February, 2004).  He is not allowed more than three such treatments a year.  (Id.).  Petitioner testified he had considered surgery in consultation with doctors but did not believe it would help.

Under questioning from the ALJ, plaintiff stated he still drives but qualified this by saying that he shouldn't.  In addition, he testified he could bathe, dress himself and do some shopping "a little at a time."  He stated he sometimes used a cane.  (TR at pp. 461-72).

Plaintiff testified that he only worked as an EMT from May to July, 2000 and that his certification has expired.  (TR at pp. 461-72).  He stated he can pick up about 15 pounds on a regular basis but that holding any position, whether standing, sitting or laying down, becomes painful if maintained too long.  Plaintiff stated he has not had any retraining or schooling.  He stated he wants to work if he could.  (Id.)

David Janus, an agency-contracted vocational expert, also testified at the hearing.  Janus was presented with hypotheticals from the ALJ concerning plaintiff's ability to work.  Janus found plaintiff's jobs as an EMT and a handyman to be semiskilled. Because plaintiff's time as an EMT was so short, Janus found it not to be transferrable.  (TR at pp. 473-78).  Given a

7

hypothetical in which plaintiff could lift 50 pounds occasionally and 25 pounds frequently and in which plaintiff could sit, stand, or walk 6 plus hours a day with occasional bending, stooping, etc., Janus opined plaintiff could not perform his previous work as either an EMT or handyman but could perform other jobs such as a linen room attendant or janitor.  (Id.)

Adding an alternative of permitting plaintiff to stand/walk at his option on the job, Janus opined that plaintiff could perform other work, for example, as an assembler.  (TR at pp. 473-78).  Given a further restriction of lifting only 20 pounds occasionally and 10 pounds frequently with the sit/stand and/or walk option, Janus opined plaintiff could do light work such as "plumbing assembler" or office helper.  (Id.)

Finally, given a scenario in which plaintiff's impairments caused him to miss 4-5 days of work a month and could not complete assigned tasks in an 8 hour day, Janus opined plaintiff could perform no work.  (TR at p. 478).

**IV. The ALJ's Decision (Agency Decision)**

The ALJ determined that plaintiff has degenerative disc disease and mild spinal stenosis.  (TR at p. 18).  He noted that an EMG in October, 2002, indicated no evidence of lumbrosacral radiculopathy but did note mild evidence of sensory motor neuropathy which was worse on plaintiff's right side.  (Id.).

The ALJ also cited a CT of the lumbar spine which revealed a disc bulge at L4 - L5 and signs of degenerative arthritis changes from L1 down to S1 but with no root involvement.  (TR at p. 18).  The ALJ also noted a history of right knee pain and a diagnosis of

a strained right knee dating from September, 2000.  (Id. at p. 19).  The ALJ also noted that plaintiff did not use an ambulatory device and has a steady gait.  (Id.).

The ALJ noted that plaintiff satisfied Steps 1 and 2 of the sequential evaluative process, in that he has is not engaged in substantial gainful activity since the date of alleged onset (July, 2002) (Step 1) and also found that he suffers impairments from degenerative disc disease and right knee strain/weakness which are severe (Step 2).   (TR at p. 19).  However, at Step 3, the ALJ determined that the severity of these impairments did not meet or exceed the Listings found in Appendix 1, Subpart P, Regulations No. 4.  (Id.).

The ALJ next evaluated plaintiff's residual functional capacity ("RFC") which the ALJ defined as "the most an individual can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks."  (TR at p. 19; see also 20 C.F.R. § 416.945).  The ALJ stated that in making this assessment he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929, Social Security Ruling 96-7p, and Bunnell v. Sullivan, 945 F.2d 341 (9th Cir. 1991)."  (TR at p. 19).

Based on his examination of the "total record," the ALJ found plaintiff's "subjective complaints, including complaints of pain and work-related functional limitations, less than credible."  (TR at p. 19).  In making this assessment the ALJ cited plaintiff's

9

characterization of his back pain as fluctuating between 1-2 and 5-6 (on a 10 scale).  The ALJ also cited the following: (1) the observation of his treating physician on August 29, 2003 that plaintiff "mov[ed] around without too much discomfort" and "had no areas of back tenderness ...";  (2) plaintiff is able to drive and travel;  (3) plaintiff needs no ambulatory "device";  (4) plaintiff fixes his own meals and shops;  and (5) plaintiff's acknowledgment he is able to lift 15 pounds frequently and, for a brief period in the summer of 2002 while working as a water truck driver, lifted objects weighing as much as 100 pounds on occasion.[1]  (Id. at pp. 19-20).

At Step 4, citing the hearing testimony of vocational expert David Janus, the ALJ found that plaintiff's impairments prevented him from performing his past relevant work either as a handyman or EMT.  However, at the final step, Step 5, the ALJ concluded that plaintiff's RFC, taking into account his impairments, did not prevent him from performing other "light work" in the national and local economy.  The ALJ relied on the factors already cited and noted that with these limitations, the vocational expert found plaintiff capable of performing "light work" such as "office helper and plumbing parts assembler."  (TR at p. 21).  For these reasons, the ALJ found plaintiff "capable of making a successful adjustment to work that exists in significant numbers in the national economy" to support a finding of not disabled.  (Id. at

---

[1]The ALJ noted that plaintiff "worked for a short time [in the summer of 2002] as a truck driver but found "this work activity did not rise to the level of a substantial gainful activity" because he worked at this job for such a short time.  (TR at p. 18).

pp. 21-22).

### V. Plaintiff's Claims of Error

Plaintiff raises several claims of error.  First, he asserts the ALJ erred by giving a "boilerplate" conclusion at Step 3 of the sequential evaluation process when he determined that plaintiff's impairments did not meet or exceed the listed criteria outlined in Listing 1.04.  Such a finding would have resulted in a finding of disabled.  (Doc. 13 at pp. 2-3).

The rest of plaintiff's claims of error relate to the process used by the ALJ in concluding that petitioner retained the RFC to perform other "light work" in the national economy (Step 5 of the sequential evaluation) and, thus, was not disabled.  (Doc. 13 at pp. 5-15).  Specifically, plaintiff alleges the ALJ erred in: (1) rejecting the finding's of plaintiff's treating physician, Maria Teresa Laurel, M.D.; (2) in relying on the opinions of non-examining state agency physicians as a basis for the RFC determination; (3) failing to make a determination of plaintiff's credibility; and (4) failing to assign any weight to the disability determination of the Veterans Administration ("VA").

### VI. Merits

The ALJ's basis for concluding that plaintiff was not disabled rested upon his determination at Step 5 of the sequential evaluation that plaintiff's RFC, after accounting for his impairments, permitted him to perform other "light work" in the economy and, thus, he was not disabled.  (TR at pp. 19-22).

Plaintiff contends this conclusion amounted to error for several reasons.  First, the ALJ improperly discounted the opinion

11

of plaintiff's treating physician.  Second, the ALJ improperly relied on the opinions of nonexamining agency physicians in making his RFC determination.  Third, the ALJ failed to make a credibility determination and, to the extent he did, the reasons were "inadequate under the clear and convincing standard." Finally, plaintiff contends the ALJ erred by failing to assign any weight to a disability determination by the VA.  (See Doc. 13 at pp. 5-15).

A. Expert Opinions

Plaintiff first asserts that the ALJ improperly discounted the opinion of his treating physician, Maria Teresa Laurel, M.D., and relied upon opinions of nonexamining agency physicians.

Questionnaires were filed by two agency-contracted physicians in this case.  The physicians based their conclusions on a review of the medical records but did not examine plaintiff.  (See TR at pp. 129, 137).  One questionnaire was signed on December 30, 2002, and the other on April 10, 2003.  (TR at pp. 136, 144).  In both instances, the physicians opined that petitioner could stand for 6 hours in an 8 hour workday and also sit for 6 hours in an 8 hour workday with only normal breaks.  (Id. at pp. 130, 138).  Both doctors also concluded plaintiff could push and pull without limitations, and had no postural, manipulative or environmental limitations.  Both doctors also concluded that although plaintiff suffered symptoms attributable to his maladies (back and knee impairments), the severity alleged was "disproportionate" to the "expected severity" given their opinion of plaintiff's condition. (See id. at pp. 134, 142).

Plaintiff was examined by Dr. Malcolm McPhee at the direction of the Arizona Department of Economic Security on December 20, 2002.  Dr. McPhee observed in his examination that plaintiff had a "normal-appearing gait" and could "tandem walk," stand on his heels and on his toes, side bend his trunk 20 degrees, bend forward from a standing position and touch his toes and resume standing again.  (TR at p. 125).  Dr. McPhee also observed plaintiff could squat, hop, remove his shoes and socks and transfer onto the examination table without difficulty.  (Id.). He also noted a "normal range of motion of the neck, shoulders, elbows, hands, wrist, hips, knees, ankles and feet."  (Id.).

Based on his observations, as well as "x-ray reports and other records," Dr. McPhee opined plaintiff "could ... lift 50 pounds occasionally and 25 pounds frequently."  (TR at p. 126). Dr. McPhee also concluded plaintiff should be able to stand or walk about six hours of an eight-hour workday.  He would be able to sit for six hours in an eight hour workday with the "usual" breaks.  He could occasionally climb, balance, stoop, kneel, crouch or crawl with no upper extremity or environmental restrictions.  (Id.).

Also included in the record is a vast number of progress and other notes from plaintiff's treating physician, Maria-Teresa Laurel, M.D.  Dr. Laurel is employed by the VA and treated plaintiff on a regular basis going back to at least 1998. Plaintiff claims she treated him as far back as 1995.  (See TR at pp. at 227, 249; see also p. 463).

Dr. Laurel's progress and other notes indicate plaintiff was

treated by her and other VA doctors for chronic back and knee pain on a continuing basis at least back to 1998.  During this time, a CT scan, Magnetic Resonance Imaging ("MRI") and EMG data showed plaintiff suffered from a disc bulge at the L4 - L5 region, and suffered knee pains as well as spinal stenosis and degenerative arthritis.  (See e.g., TR at pp. 174-75, 179-80, 366-67).  Dr. Laurel documented repeated "impressions" of chronic low back pain and knee pain throughout this period.  On January 29, 2004, in anticipation of the Agency hearing, Dr. Laurel filed an RFC Questionnaire indicating plaintiff suffered a "severe" level of pain which could be "expected to result from objective clinical and diagnostic findings, which have been documented by [her]," and others.  (Id. at p. 452).  Dr. Laurel indicated her opinion that this pain interfered with plaintiff's attention and concentration on a constant basis and also opined that the "severe" pain suffered by plaintiff would "constantly" interfere with his ability to complete work-related and other tasks in a timely manner during a workday.  (Id. at p. 453).

### B. Analysis

The ALJ assigned "little weight" to Dr. Laurel's findings. In doing so, the only specific reasons cited by the ALJ are that she "did not provide any medical records to support [her] [RFC] assessment" and she "does not cite any specific clinical or diagnostic findings on which to base [her] medical opinions."  (TR at p. 20).  In concluding plaintiff was not disabled at Step 5, the ALJ noted that progress notes showed that plaintiff estimated his back pain at various times between 1-2 and 5-6 on a 10 scale.

1   (TR at pp. 429-42).  The ALJ also noted that after spinal epidural

2   injections plaintiff rated his pain as zero.  (See id. at p. 434).

3        To support his finding of "not disabled" at Step 5, the ALJ

4   also cited an observation by Dr. Laurel in an August 29, 2003

5   progress note, stating that in spite of "ongoing complaints of

6   back pain," plaintiff moved well "without too much discomfort and

7   no areas of back tenderness ..."[2]  (TR at pp. 20, 437).  Finally,

8   the ALJ noted that plaintiff could drive and travel (citing a trip

9   to California in November 2003), uses no ambulatory device, fixes

10  his own meals, shops and has acknowledged being able to lift 15

11  pounds frequently.  (TR at pp. 20-21).

12       It is of note that the ALJ only passingly mentioned medical

13  expert opinions in support of his conclusion that petitioner

14  retained the RFC to perform other "light work" (Step 5 of the

15  sequential evaluation).  He did not cite Dr. McPhee's findings

16  specifically, or those of the two nonexamining agency physicians.

17  Instead he stated "that findings of fact made by State agency

18  medical consultants and other program physicians regarding the

19  nature and severity of an individual's impairment(s) ... are

20  assigned weight to the degree they are consistent with the medical

21  evidence and findings herein."

22   _____

23       [2]The ALJ's characterization does not relay the whole picture.
    A closer look indicates this was not an impression formed by Dr.
    Laurel but rather a nurse who saw plaintiff as part of an ongoing

24  regimen for monitoring and managing his pain.  (See TR at  pp. 435-
    37).   The nurse's note from October 8, 2003 also note that

25  plaintiff's  indications  of  less  pain  follow  closely  upon  an
    epidural injection. (See id. at pp. 436-37).  However, the specific

26  progress note of August 29, 2003, cited by the ALJ, apparently done
    prior to the epidural, shows plaintiff indicated his "chronic low

27  back pains ... [have] gotten worse."  (Id. at p. 437).

28                                    15

1     Upon review, the Court believes the ALJ improperly discounted

2     the opinion of plaintiff's long-time treating physician, Dr.

3     Laurel.  The ALJ may not discount the uncontradicted opinions of

4     examining physicians, and particularly long-time treating

5     physicians, unless he cites "'clear and convincing' reasons

6     supported by substantial evidence in the record." Reddick v.

7     Chater, 157 F.3d at 725.  Even if the treating doctor's opinion is

8     contradicted by another doctor, the ALJ must still provide

9     "specific and legitimate reasons' supported by substantial

10    evidence in the record."  Id.

11     The assessments of Dr. McPhee (who examined plaintiff on one

12    occasion in December, 2002) and the non-examining Agency

13    physicians clearly differ from the opinion of Dr. Laurel, the

14    treating physician.  Dr. McPhee and the non-examining experts all

15    conclude that plaintiff has the RFC to perform some work in the

16    economy, findings which support the ALJ's determination at Step 5

17    of the sequential evaluation that plaintiff could perform limited

18    "light work."  (See TR at pp. 125-26, 129-36, 138-44).

19    Conversely, Dr. Laurel's RFC statement clearly indicates that

20    plaintiff's "severe" pain prevents him from completing work-

21    related tasks in a timely manner.  (TR at p. 453).

22     As noted, the ALJ's findings must be supported by substantial

23    evidence in the record.  However, the Court is cognizant of the

24    fact that Dr. Laurel's observations occurred over years, while Dr.

25    McPhee's conclusions are based upon one examination and the agency

26    experts never examined plaintiff at all.  Absent specific and

27    legitimate reasons, supported by substantial evidence, much

28                                  16

greater weight should be given to Dr. Laurel's findings if those findings are supported by the record.  See 20 C.F.R. § 404.1527(d)(2).

The Court believes the ALJ erred in concluding that Dr. Laurel cited no medical evidence to support her opinion.  The questionnaire itself does not request such support.  However, the questionnaire does ask if Dr. Laurel's opinions are based on "objective clinical or diagnostic findings."  (TR at p. 452).  Dr. Laurel responded that her opinions are so based and medical evidence, in particular, the progress notes from several years of treating plaintiff, support this conclusion.

From at least 1998 on (if not before), plaintiff received constant care for his back and knee pain.  The notes reveal a CT scan, as well as an MRI and an EMG.  These notes and procedures provide objective evidence of conditions such as spinal stenosis, degenerative arthritis, and a disc bulge at the L4 - L5. Particularly, in Dr. Laurel's notes from October 21, 2002, she characterized the MRI as showing:

> 1. INTRASPINAL 1 CM CYSTIC LESION AT THE LEVEL OF S-2, PROBABLY TARLOV CYST.  THIS ABUTS THE IPSILATERAL DESCENDING NERVE ROOT AND IMPINGES ON THE RIGHT LATERAL RECESS.
>
> 2. MULTILEVEL FACT DJD.  IN COMBINATION WITH MILD DIFFUSE DISC BULGING AT L4 - L5, THERE IS SEVERE PROXIMAL NEUROFORAMEN COMPROMISE, LEFT GREATER THAN RIGHT.  THERE IS MODERATE PROXIMAL FORAMINAL NARROWING ON THE RIGHT AND MILD NARROWING ON THE LEFT AT L3 - 4 NOTED ALSO.

(TR at pp. 180, 366-67).

These findings by Dr. Laurel constitute objective evidence of an impairment of plaintiff's lower back capable of supporting her

17

conclusion that he suffers a "severe" impairment that would "constantly" hamper his ability to perform work-related tasks in a timely fashion.  Dr. Laurel's "impressions" based on the MRI are not refuted by Dr. McPhee or the non-examining experts.

The ALJ cited no other specific basis for assigning "little weight" to Dr. Laurel's opinion.  However, the ALJ did note that plaintiff only characterized his pain as between 1-2 and 5-6 in the treating progress notes.  (TR at p. 20).  The Court has examined these notes and believes this summary conclusion is incomplete at best.

These notes appear are characterized as "nursing nerve block record" and "pain management session" notes created by nurses for follow-on checkups referred by Dr. Laurel to help plaintiff deal with his chronic pain.  Notes from October 24, 2003, show plaintiff characterized his pain as 6.  (TR at p. 429).  In addition, plaintiff also indicated his pain was a 10 when he attempted specific activities such as sleeping, walking, physical activity,  and normal daily activity.  (Id. at p. 430).  In progress notes from October 8, 2003, plaintiff characterized his pain as a 5.  (Id. at p. 434).  In a previous examination by Dr. Laurel, plaintiff characterized his pain at 5-6 on a 10 scale.  (Id. at p. 437).  Again, when connected with simple activities such as sleeping, walking, etc., plaintiff invariable indicated his pain was a 10.  (Id. at p. 442).  The ALJ appears to have ignored certain reports of pain and emphasized others.

Finally, the ALJ's citation to the facts that plaintiff drives and travels on occasion, fixes meals and shops, admits he

18

can lift up to 15 pounds frequently and uses no device for
ambulation is not evidence sufficient to contradict the findings
of Dr. Laurel, or discount plaintiff's credibility with respect to
pain testimony.  Plaintiff is 6'3" tall and weighs more than 230
pounds.  The fact he lifts 15 pounds frequently and attempts to
perform other functions of routine daily living does not provide
sufficient evidence to discount Dr. Laurel's findings.
"Occasional symptom-free periods and even sporadic ability to work
are not inconsistent with disability."  Lester v. Chater, 81 F.3d
821, 833 (9th Cir. 1996).  Nor should claimants be "penalized for
attempting to lead normal lives in the face of their limitations."
Reddick, 157 F.3d at 722; Cooper v. Brown, 815 F.2d 557, 561 (9th
Cir. 1987) ("a disability claimant need not 'vegetate in a dark
room' in order to be eligible for benefits"); Fair v. Bowen, 885
F.2d 597, 603 (9th Cir. 1989) ("Many home activities are not
easily transferrable to ... the more grueling environment of the
workplace, where it might be impossible to periodically rest or
take medication.").

In sum, none of the reasons cited by the ALJ, either singly
or in total, rise to the level of substantial evidence, let alone
clear and convincing evidence, necessary to justify discounting
the opinion of plaintiff's treating physician.  When her opinion
is given proper weight, establishing plaintiff suffers from
medically significant impairments that even the ALJ found "severe"
at Step 2 of the sequential evaluation, plaintiff's pain testimony
should be credited.  If that testimony is credited, the vocational
expert indicated plaintiff could not work.  (TR at p. 478).

19

As already noted, the ALJ further erred in discrediting plaintiff's pain testimony.  At the hearing, plaintiff testified his "back hurts so much that every couple hours or so if I do any type of work at all that I have to lay down for an hour or so throughout the day."  (TR at p. 461).  Plaintiff further testified his primary pain was in his lower back but that it sometimes runs down his legs.  He testified that after he wakes up his pain becomes "sharp" once he starts moving or functioning.  (Id. at p. 462).  He stated that during an 8-hour workday he would need to lie down for at least 3 hours.  (Id.).  This testimony, combined with Dr. Laurel's opinion, constitutes strong evidence supporting the view plaintiff is precluded from performing any work and the vocational expert agrees.  (TR at p. 478).

With respect to plaintiff's credibility, the ALJ stated only that "[t]he evidence of record simply does not substantiate the intensity of pain alleged by the claimant.  Progress notes estimated back pain to fluctuate between 1-2 and 5-6. [Citation omitted].  After epidural injections, ... his pain rating has been zero."  (TR at p. 20).

Plaintiff contends this finding is inadequate.  He argues "[t]he ALJ's view of the 'evidence of record' ... was misplaced" and that the ALJ does not possess the expertise to make an independent determination of the medical evidence.  (Doc. 13 at p. 12).  The Court agrees.  The Ninth Circuit has held that "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are

unsupported by objective medical evidence." <u>Reddick</u>, 157 F.3d at
722 (citing <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1991)(en
banc)).  The court also stated that "[u]nless there is affirmative
evidence showing that the claimant is malingering, the
Commissioner's reasons for rejecting the claimant's testimony must
be 'clear and convincing.'" [Citation omitted].  'General findings
are insufficient; rather, the ALJ must identity what testimony is
not credible and what evidence undermines the claimant's
complaints." <u>Reddick</u>, 157 at 722.

Applying this standard, the ALJ's assessment of plaintiff's
credibility falls short.  His cursory findings are not based on
specifics, let alone "clear and convincing" reasons.  To the
extent discernible, the ALJ appears to conclude that the objective
medical evidence does not support plaintiff's pain testimony.
However, as noted in <u>Reddick</u>, absent evidence of malingering, and
there is none here, this is an insufficient basis for discounting
plaintiff's credibility once, as here, plaintiff has produced
medical evidence of an underlying impairment.  In fact, based on
the progress notes and Dr. Laurel's conclusions, plaintiff's pain
testimony is credible and the ALJ erred in discounting it.

Providing due weight to Dr. Laurel's findings and plaintiff's
pain testimony requires reversal of the ALJ's determinations.  The
overall evidence produced supports a finding that plaintiff cannot
perform full-time work in the economy and he is entitled to a
finding of disabled.

Finally, the Court notes another factor which must be
weighed in plaintiff's favor.  The VA determined in June, 2003,

1   that plaintiff was entitled to VA benefits due to disabilities

2   based, inter alia, on his "degenerative disc disease of your

3   lumbar spine and internal derangement of your right knee ..."   (TR

4   at p. 117).   A VA determination of disability "although not

5   necessarily compel[ling] the SSA to reach an identical result,

6   ..., must [be] consider[ed] ..."  McCartey v. Massanari, 298 F.3d

7   1072, 1075 (9th Cir. 2002).   In fact, "an ALJ must ordinarily give

8   great weight to a VA determination of disability." Id.   In this

9   case, the ALJ failed to address the VA determination of disability

10   altogether.   This was error.

11       The question now is whether remand is appropriate for an

12   award of benefits or for further determinations and a new finding

13   by the Agency.   The standard for making this determination was

14   laid out in Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004).   In

15   Benecke, the court held that "where the record has been developed

16   fully and further administrative proceedings would serve no useful

17   purpose, the district court should remand for an immediate award

18   of benefits." Id. at 593.   Specifically, a reviewing court

19   should:

20           ... credit evidence that was rejected during the
            administrative process and remand for an immediate award
21           of benefits if (1) the ALJ failed to provide legally
            sufficient reasons for rejecting the evidence; (2) there
22           are no outstanding issues that must be resolved before a
            determination of disability can be made; and (3) it is
23           clear from the record that the ALJ would be required to
            find the claimant disabled were such evidence credited.
24
    Benecke, 379 F.3d at 593.
25
        Here, the Court believes the ALJ did not provide legally
26
    sufficient reasons for discounting Dr. Laurel's findings and
27

plaintiff's pain testimony.  If this evidence is credited, and in light of the vocational experts' conclusion that the limitations indicated by this evidence support a finding of disabled, no purpose will be served by a remand for further findings.  In light of <u>Benecke</u> and noting that plaintiff's application has been pending for nearly four years, remand for an award of benefits is appropriate.

Finally, in light of the Court's finding of error at Step 5, its further conclusion that plaintiff is unable to perform work in the economy and is disabled, and its determination to remand for an award of benefits, the Court need not address plaintiff's additional claim that the ALJ erred at Step 3 when it concluded that plaintiff's impairments did not meet or exceed the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Summary Judgment (Docs. 11, 12 and 13) is granted.

**IT IS FURTHER ORDERED** that defendant's Cross-Motion for Summary Judgment (Docs. 14, 15 and 21) is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in this matter accordingly.

DATED this 21st day of September, 2006.

_Virginia A. Mathis_
Virginia A. Mathis
United States Magistrate Judge